IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MADELINE CANDELARIO DEL
MORAL

    Plaintiff

           **v.**

UBS FINANCIAL SERVICES
INCORPORATED OF PUERTO RICO

    Defendants

**Civil No. 08-1833 (SEC)**

**OPINION and ORDER**

Pending before this Court is Defendant UBS Financial Services Incorporated of Puerto Rico's ("UBS") Motion for Summary Judgment (Dockets ## 23 & 24), Plaintiff Madeline Candelario del Moral's ("Candelario" or "Plaintiff") opposition thereto (Docket # 31), UBS's reply (Docket # 43), and Plaintiff's sur-reply (Docket # 59). Plaintiff then filed a Cross-Motion for Summary Judgment (Dockets ## 38 & 39), to which UBS opposed (Dockets ## 54 & 56), Plaintiff replied (Dockets ## 67-69), and UBS sur-repied (Docket # 72). Upon reviewing the filings, and the applicable law, Plaintiff's motion is **GRANTED in part and DENIED in part**, and UBS's motion is **GRANTED in part and DENIED in part.**

**Factual Background**

On August 8, 2008, Plaintiff filed the present diversity under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141. In the complaint, Plaintiff alleges that UBS failed to conserve, and negligently released her ex-husband, David Efrón's ("Efrón") assets, despite the Commonwealth court's orders of seizure and attachment issued in October 2006 ("Order and Writ of Execution"). Candelario argues that, as a result of UBS's actions, Efrón depleted his accounts with UBS, and consequently, she did not receive $3,808,739.48, plus interest that she was entitled to pursuant to the Commonwealth courts' rulings.

On April 3, 2009, UBS moved for summary judgment, arguing that Plaintiff's claims were time-barred. UBS further contends that Plaintiff has no actionable claim under Article 1802. Dockets ## 23 & 24. In support thereof, UBS posits that the October 2006 Order and Writ of Execution were verbally vacated by Puerto Rico Superior Court Judge, Charles Jiménez-Nettleship ("Judge Jiménez-Nettleship"), during a hearing held on November 13, 2006. UBS further argues that the attachment of Efrón's accounts was removed after a careful review of the Superior Court's verbal order issued in open court, the Minutes for said proceedings, Plaintiff's appeals to the Puerto Rico Court of Appeals and Supreme Court, and said courts' rulings on the matter.

Plaintiff opposed, and on May 6, 2009, she filed a cross motion for summary judgment. Docket ## 37-39. According to Plaintiff, the Order and Writ of Execution, issued in accordance with the Puerto Rico Court of Appeals' February 16, 2006 Judgment, constitute the law of the case. Plaintiff further avers that Judge Jiménez-Nettleship's verbal order did not affect the Order and Writ of Execution's validity. According to Plaintiff, the Minutes of the November 13, 2006 hearing were never signed by the Judge, nor certified and notified to the parties by the Courtroom Clerk, as required by the Rule 32(b)(1) for the Administration of the Court of First Instance of the Commonwealth of Puerto Rico (Rule 32), P.R. Laws Ann. tit. 4, R. 32. As a result thereof, Plaintiff argues that Judge Jiménez-Nettleship's verbal order was never valid or enforceable.

The parties filed numerous replies and sur-replies. On October 20, 2009, in light of the issues of state law raised in the present case, this Court requested Certification from the Supreme Court of Puerto Rico. Docket # 80. However, On November 13, 2009, the Supreme Court declined to exercise its jurisdiction in the present case. See Docket # 84. As such, this Court must now rule upon the pending motions for summary judgment.

**Civil No. 08-1833 (SEC)**                                                   3

---

### Standard of Review

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material.  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted).  "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

 In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish

a genuine issue of material fact.  Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion."  Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

Because the instant motions are for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered." FED. R. CIV. P.  56(e)(2). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the

court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). When the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Uncontested Facts**

Candelario is of legal age, a citizen of the United States, and a resident of Florida. Plaintiff's Statement of Uncontested Facts (Docket # 38) ("Plaintiff's SUMF") ¶ 1. She is an attorney at law, graduated from the Interamerican University of Law in 1976, and also earned a Masters Degree in Law from the University of Miami in 1977. UBS's Statement of Uncontested Facts (Docket # 23) ("UBS's SUMF") ¶ 3. UBS is a wholly owned subsidiary of UBS Financial Services, Inc., and a registered broker-dealer authorized to do business in Puerto Rico. UBS's SUMF ¶ 1. It is a corporation created under the laws of Puerto Rico, with its principal place of business in Puerto Rico, with capacity to sue and be sued. Plaintiff's SUMF ¶ 2; UBS's SUMF ¶ 1. Plaintiff was married to Efrón, and both of them formed part of a community property regime. Plaintiff's SUMF ¶ 3; UBS's SUMF ¶ 3. On May 3, 2001, the marriage ended in divorce by Judgment of the Court of First Instance of Puerto Rico, San Juan Section ("Superior Court"). Plaintiff's SUMF ¶ 4; UBS's SUMF ¶ 3. Since then, they have been engaged in litigation before the Superior Court regarding the liquidation of their marital community property. UBS's SUMF ¶ 3.

During the proceedings, Superior Court Judge Orama-Monroig entered judgment in favor of Candelario for the monthly payment of $50,000.00, as part of her participation in the assets of the conjugal partnership previously constituted by her and Efrón. Plaintiff's SUMF ¶ 5. The assets of  Efrón and Candelario's conjugal partnership exceed $70,000,000, all under the absolute control of Efrón. Id. The $50,000 monthly payments were to be paid from June 4, 2001. Id.  Both Efrón and Candelario appealed on different grounds to the Puerto Rico Court

of Appeals, which affirmed the Superior Court's judgment in favor of Candelario. Id. Thereafter, Judge Orama-Monroig was reassigned, and replaced by Judge Jiménez-Nettleship. Plaintiff's SUMF ¶ 6. Pursuant to Efrón's request, Judge Jiménez-Nettleship reduced the monthly payment from $50,000 to $20,000.00. Id. Once again, Efrón and Candelario appealed to the Puerto Rico Court of Appeals, which denied Efrón's petition, and granted Candelario's request. Id. To wit, on February 16, 2006, the Puerto Rico Court of Appeals entered an Amended Judgment reinstating the $50,000 monthly payments to be made by Efrón from June 4, 2001, plus interest from that date. Id.

Pursuant to the abovementioned Judgment of the Court of Appeals, on October 9 and 16, 2006, respectively, the Superior Court issued the Order, and Writ of Execution. Plaintiff's SUMF ¶ 7 & 8. On October 20, 2006, a Superior Court Marshal served upon UBS the following three documents, issued in case *Madeleine Candelario del Moral v. David Efrón*, K DI1999-1421, K DI1999-1808, pending before the Superior Court: (a) Order to Execute Judgment ("Orden de Ejecución de Sentencia") issued by Superior Judge Jiménez-Nettleship, (b) Writ Of Execution Of Judgment ("Mandamiento de Ejecución de Sentencia") issued by the Regional Clerk of the Court of First Instance Rebecca Rivera Torres, Esq., and (c) Statement of Assets ("Señalamiento de Bienes") signed by Michelle Pirallo Di Cristina, Esq. ("Pirallo" or "Plaintiff's counsel"), counsel for Plaintiff. UBS's SUMF ¶ 4; Plaintiff's SUMF ¶ 10.

The Order to Execute Judgment provided, among other issues, for the attachment and/or garnishment of Efrón's real and personal property, even if the property was in the possession of third parties, and if the property was not liquid and available when the attachment and/or garnishment was carried out. UBS's SUMF ¶ 4; Plaintiff's SUMF ¶ 7. The Marshal was to request that the third parties retain the property when it liquidated, so that in due course the funds would be remitted to the court in an amount sufficient to satisfy the principal sum of

**Civil No. 08-1833 (SEC)**                                                      7

$4,160,522.61, plus interest thereon at the rate of 10.50% per annum, from June 4, 2001 until the debt is fully paid.  UBS's SUMF ¶ 4; Plaintiff's SUMF ¶ 7. Candelario's Statement of Assets requested UBS to garnish the assets in UBS accounts JX-36196, M9-16106, JX-60059, and in any other account maintained by Efrón at UBS. UBS's SUMF ¶ 6; Plaintiff's SUMF ¶ 9. The Order and Writ of Execution, and the Statement Of Assets were drafted by Plaintiff's counsel, and issued by the Superior Court without any noticeable changes. UBS's SUMF ¶ 7.

In accordance with the Order and Writ of Execution, on October 20, 2006, UBS attached the following three accounts, JX-60059, WR-00855 and 5V-50203. UBS's SUMF ¶ 8.[1] Account 5V-50203 is a Credit Line Agreement and Premier Variable Credit Line Account with UBS Bank USA. UBS's SUMF ¶ 8; UBS's SUMF ¶ 27 & 28. Pursuant to the Credit Line Agreement, UBS Bank USA,  a corporation organized and existing under the laws of Utah, had a perfected first-priority lien and security interest over the assets in Efrón's Investment Account JX60059, to secure the loans advanced to Efrón in Account 5V-50203. UBS's SUMF ¶ 8 & 28. Moreover, if the collateral account (JX60059), or any portion thereof, was terminated, attached or subjected to a levy, the loan obligations would be immediately due and payable. UBS's SUMF ¶ 28. While his accounts were restrained, Efrón could not purchase or sell securities in account JX-60059, nor withdraw funds from this account to pay the interest charged to loan Account 5V-50203. UBS's SUMF ¶ 8. Pursuant to Efrón's motion questioning the Order and Writ of Execution's legality, an emergency hearing regarding this issue was set for November 13, 2006. Plaintiff's SUMF ¶ 12.

On October 27, 2006, UBS filed a "Motion to Clarify Order" in the Superior Court, stating that Efrón did not have enough cash to satisfy the amount set forth in the judgment, and

---

[1]   Accounts M9-16106 and JX36196 were closed prior to the October 20, 2006 Order and Writ of Execution. UBS's SUMF ¶ 8.

acknowledging, however, that some of Efrón's assets would have to be sold to pay off said amount. Plaintiff's SUMF ¶ 11. In said motion, UBS also sought instructions from the Superior Court regarding which of Efrón's assets should be liquidated in order to satisfy the court's judgment, and addressed alleged discrepancies regarding the principal amount owed. Id. UBS further suggested to the court that the matter be clarified by the court and the parties at the November 13, 2006 hearing, to be held before Judge Jiménez-Nettleship. Id.

The hearing regarding the Order and Writ of Execution was held on November 13, 2006. UBS's SUMF ¶ 10. Plaintiff was timely notified about the hearing; attended the hearing; had the opportunity to present oral arguments and evidence; and was given the opportunity to ask the court to reconsider its ruling. UBS's SUMF ¶ 10. During the same, and after considering the parties' arguments and their testimony, Judge Jiménez-Nettleship verbally vacated the Order and Writ of Execution issued in October 2006. Plaintiff's SUMF ¶ 13; UBS's SUMF ¶ 11. Specifically, the Judge stated: "[w]e are vacating the order and the notations of attachment," and shortly thereafter, he denied Plaintiff's counsel request for reconsideration. UBS's SUMF ¶ 11.

Minutes of the hearing were transcribed on December 12, 2006, and included in the case file by the Courtroom Clerk. Id. The Minutes of the proceedings state: "the orders and annotations of attachments are hereby set aside." UBS's SUMF ¶ 12. Plaintiff and her counsel were aware of the fact that Judge Jiménez-Nettleship verbally vacated the Order and Writ of Execution during the hearing. UBS's SUMF ¶ 13 & 14. Plaintiff did not request that Judge Jiménez-Nettleship issue a written order vacating the Order to Execute Judgment, or produce and notify a copy of the Minutes of the Proceedings, nor did she hire a private court reporter to prepare a transcript of the hearing. UBS's SUMF ¶ 15 & 16.[2] Candelario did not file a written

---

[2] Defendant argues that Plaintiff's counsel should have requested that the verbal order be issued in writing. However, UBS provides no record citations or case law in support of said assertion of fact.

**Civil No. 08-1833 (SEC)**                                                              9

motion for reconsideration of Judge Jiménez-Nettleship's order vacating the Order to Execute

Judgment. Id. at 17. She never notified UBS that Judge Jiménez-Nettleship verbally vacated the

Order and Writ of Execution. Id. at 18. Since UBS was unaware of Judge Jiménez-Nettleship

verbal order, Efrón's accounts at UBS remained attached pursuant to the Order and Writ of

Execution, until their release on February 16, 2007.  Id. at 19.

   On November 16, 2006, Candelario filed a Motion in Aid of Jurisdiction and Request

for Mandamus before the Puerto Rico Court of Appeals, seeking to revoke and set aside the

verbal order. Plaintiff's SUMF ¶ 14; UBS's SUMF ¶ 20. She further requested that the appeals

court order Judge Jiménez-Nettleship to immediately comply with his ministerial duty, and order

the execution of the Amended Judgment rendered by the Court of Appeals on February 16,

2006, and the Superior Court's October 2006 Order and Writ of Execution.  Plaintiff's SUMF

¶ 14.[3]

   On November 21, 2006, the Court of Appeals dismissed Candelario's request, upon

finding that it lacked jurisdiction to entertain the same.  Plaintiff's SUMF ¶ 15; UBS's SUMF

¶ 22. To wit, the appeals court expressed, in pertinent part, that:

   Rule 32(b)(1) for the Administration of the Court of First Instance of the
   Commonwealth of Puerto Rico, 4 L.P.R.A. Ap II-B R.32, provides the following:

---

As such, UBS's arguments on this front fail.

   [3]  Specifically, Candelario requested the Court of Appeals to issue the Writ of Mandamus and:
"(i) Order the immediate stay of the verbal orders of Judge Charles Jiménez-Nettleship, in consolidated
cases KDI 1999-1421 (708) and KDI 1998-1808 (708), that are contrary to the execution of the
judgment; (ii) Order Judge Charles Jiménez-Nettleship to immediately comply with his ministerial duty
and order the execution of the Amended Judgment rendered by [the Court of Appeals] on February 16,
2006; (iii) Order to set aside any ruling, act or order rendered by Judge Jiménez-Nettleship that is
contrary to the execution of the Amended Judgment rendered by this Court; (iv) Order Judge Jiménez-
Nettleship to strict compliance of the mandate issued by the Supreme Court of Puerto Rico on
September 8, 2006; (v) Order Judge Jiménez-Nettleship to immediately place in force the order of
execution of judgment dated October 9, 2006; (iv) Render any other order or ruling proper under law
or equity." UBS's SUMF ¶ 21.

**Civil No. 08-1833 (SEC)**                                                    10

---

    (b)(1) Minutes. –The minutes shall be the official record of the most important incidences occurred during the judicial hearing in the courtroom and in chambers.
...
        The minutes shall not be notified to the parties or to their attorneys, except if it includes a ruling or order and rendered by the judge in open court, in which case, it shall be signed by the judge and notified to the parties.
...
        In Sánchez v. Dr. Pila Hospital, opinion of December 6, 2002 J.T.S. 154, it was ruled that:
        "The ruling or order issued on June 8, 2001 verbally in open court, whereby the request of the petitioners to use two additional experts was denied was not notified to the parties in the manner set forth in Rule 32B. Because a notice in writing of the finding of the instance court denying the request of the plaintiffs to present additional experts was not sent to the parties, the reconsideration filed by the plaintiffs was premature."
        …
We rule that a verbal notice "of an interlocutory finding of the first instance court in a civil case does not constitute a notice that is required to activate the term provided by law to file a motion for reconsideration or a recourse of certiorari before the Circuit Court. The notice that activates these terms must be set forth in writing and said document must be notified to the parties."

Plaintiff's SUMF ¶ 16.

    Thus the Court of Appeals, citing Sánchez v. Dr. Pila Hospital, 158 P.R. Dec. 255 (2002), found that it lacked jurisdiction to entertain Candelario's request for mandamus because Judge Jiménez-Nettleship's verbal order did not comply with Rule 32. Plaintiff's SUMF ¶ 17. The appeals court also noted that "one cannot resort before the Court of Appeals until [an order issued by the lower court] is transcribed in rulings or minutes." Id.

    In light of the foregoing, on December 15, 2006, Candelario filed an Urgent Informative Motion and Petition for *Certiorari* with the Puerto Rico Supreme Court, seeking to set aside the Judgment rendered by the Court of Appeals; Judge Jiménez-Nettleship's rulings other than the execution of the Court of Appeal's February 16, 2006 Amended Judgment; and requesting that Judge Jiménez-Nettleship be ordered to execute said Amended Judgment. Plaintiff's SUMF ¶

**Civil No. 08-1833 (SEC)**                                                                      11

18; UBS's SUMF ¶ 22.[4] On February 15, 2007, the Puerto Rico Supreme Court denied Candelario's Petition for *Certiorari* stating that the same "[lacked] the necessary documents reflecting what was ruled in the oral hearing before the First Instance Court on November 13, 2006". Plaintiff's SUMF ¶ 20; UBS's SUMF ¶ 23.

On or about February 15, 2007, UBS received copies of the following documents: Minutes of the hearing held before Judge Jiménez-Nettleship on November 13, 2006, Motion In Aid of Jurisdiction and Petition for *Mandamus* filed by Candelario with the Puerto Rico Court of Appeals (Case Number KLRX2006-00058), Judgment rendered by the Court of Appeals denying Candelario's Petition for *Mandamus*, Urgent Informative Motion and Petition for *Certiorari* filed by Candelario with the Supreme Court of Puerto Rico (Case Number CC-2006-1138), and Puerto Rico Supreme Court Resolution denying Candelario's Petition for *Certiorari*. UBS's SUMF ¶ 24. On February 16, 2007, after an evaluation of these documents by its counsel, UBS released the restraints on Efrón's three accounts. Id.

On February 27, 2007, counsel for UBS, Guillermo J. Bobonis, Esq. ("Bobonis" or "UBS's counsel"), sent Plaintiff's counsel a fax along with a copy of a document titled "Minutes." Plaintiff's SUMF ¶ 22. On March 17, 2007, Candelario filed a Motion for Reconsideration and in Aid of Jurisdiction before the Supreme Court, to which she attached a copy of the Minutes of the hearing held before Judge Jiménez-Nettleship on November 13, 2006. Plaintiff's SUMF ¶ 21; UBS's SUMF ¶ 23. Therein, she requested the Supreme Court to reconsider its resolution declining review of the Judgment of the Court of Appeals and to,

---

[4]   Candelario moved the Supreme Court to: "repeal the Judgment issued by the Court of Appeals"; "grant the petition of mandamus which is presented before the Court of Appeals, and consequently, order [the Judge] to abide by the execution of the Amended Judgment [of] February 16, 2006...to abide by the mandate issued by [the Supreme Court] on September 8, 2006"; "set aside any ruling issued by [the Judge] other than the execution of the Amended Judgment," and to issue "any other ruling proper under the law and/or equity." Plaintiff's SUMF ¶ 19.

among others, "order the First Instance Court through its Administrative Judge, Honorable Isabel Llompart, to notify the appearing party of the Minute of the hearing of November 13, 2006 and/or any other order, ruling or judgment for all corresponding legal purposes." Plaintiff's SUMF ¶ 2. The Supreme Court denied Plaintiff's request for reconsideration. UBS's SUMF ¶ 23.

The Minutes for the November 13, 2006 hearing are not signed by Judge Charles Jiménez-Nettleship or any other judge, nor were notified to the parties by the Courtroom Clerk. Plaintiff's SUMF ¶ 24. The first time that Candelario, or her attorneys, became aware of the existence of the Minutes was when Bobonis sent Pirallo a copy of the document via fax on February 27, 2007. Id.

In a letter dated February 9, 2007, Pirallo advised Bobonis that "even though the [Order of Attachment] was verbally revoked by [the Judge] said ruling has never been notified and therefore, it is not final and binding." Plaintiff's SUMF ¶ 26. Plaintiff's counsel sent two additional letters, on March 2 and 29, 2007, requesting counsel for UBS to maintain Efrón's accounts "frozen" as Candelario had filed a petition before the Supreme Court, and reiterating that the verbal order by Judge Jiménez-Nettleship was not final or binding because the Minutes of the November 13, 2006 hearing were never notified. Plaintiff's SUMF ¶ 27 & 28.  On or about March 1, 2007, Candelario's attorney also provided UBS with a copy of the Motion for Reconsideration and in Aid Of Jurisdiction filed with the Supreme Court of Puerto Rico. UBS's SUMF ¶ 24. Later on, UBS obtained from the Clerk's Office of the Supreme Court of Puerto Rico a certified copy of a Resolution issued by said court on March 7, 2007 denying Candelario's Motion for Reconsideration.  Id.

On May 2, 2007, UBS sent a letter to Efrón stating that when served with the attachment order UBS asked their attorneys "to call the court [that is Judge Jiménez-Nettleship] to ascertain

[the real meaning and scope of the order]"; that "the exchange between counsel [for UBS] and the court (that is Judge Jiménez-Nettleship) was immediately communicated by [UBS's] attorney's to Diana Méndez Ondina, Esq. [Efrón's attorney]; a that "at no time did [Jiménez-Nettleship] verbally order UBS PR through [its] attorneys to liquidate positions in [Efrón's] accounts." Plaintiff's SUMF ¶ 29. In said letter, Margarita Landaburu, Esq., UBS's Assistant General Counsel, acknowledged that UBS "learned about the ruling when [Efrón] provided a copy of the minutes of the hearing as well as a copy of the judgment rendered by the Court of Appeals refusing to revoke the lower court's ruling. Once [Efrón] advised UBS PR of the court's ruling, UBS acted swiftly. Upon reviewing the documents, the firm removed the restriction on [Efrón's] accounts in a matter of days." Plaintiff's SUMF ¶ 30.

On August 20, 2007, Superior Court Judge Arlene Sellés Guerrini issued an "Order for the Sale of Assets," acknowledging UBS's motion to clarify dated October 27, 2006, and setting forth specific instructions for UBS regarding the liquidation of assets belonging to Efrón. Plaintiff's SUMF ¶ 33; UBS's SUMF ¶ 26. Therein, UBS was ordered to immediately sell and liquidate Efrón's assets until the amount of $4,160,522.61 was reached, and thereafter issue a check payable to Candelario for said amount. Plaintiff's SUMF ¶ 34. UBS was also "ordered to maintain Efrón's account frozen until the amount of interest accrued on the debt as of the day of the aforementioned payment is calculated and until otherwise ordered by this Court." Plaintiff's SUMF ¶ 35. The court also ordered Efrón to immediately comply with his obligation to pay Plaintiff $50,000 every month until final liquidation of the assets of the Community Property Regime. Plaintiff's SUMF ¶ 36. On August 27, 2007, UBS PR was served with a copy of the aforementioned Order Concerning the Sale of Assets. UBS's SUMF ¶ 26. On August 29, 2007, UBS restrained the accounts maintained by Efrón at that time. Id.

As of May 2007, Efrón's Investment Account WR-00855 had no assets. UBS's SUMF ¶ 27. On August 21, 2007, Account 5V-50203, the Credit Line with UBS Bank USA, had a loan balance of $804,043. UBS's SUMF ¶ 28.  On August 30, 2007 UBS, as a securities intermediary within the meaning of the Uniform Commercial Code of Utah, liquidated the securities in UBS account number JX-60059. UBS's SUMF ¶ 29. On August 31, 2007, UBS PR wired $810,071.87 to UBS Bank USA to pay the balance owed by  Efrón in Account 5V-50203. UBS's SUMF ¶ 29. Since September 3, 2007 was a legal holiday, on September 4, 2007, UBS issued a check to the order of Candelario in the amount of $351,783.13, the net balance remaining in the account after paying off said loan. UBS's SUMF ¶ 29; Plaintiff's SUMF ¶ 37. The check was personally picked up by Candelario's counsel. UBS's SUMF ¶ 29.

By "Motion Complying with Order to Show Cause," filed by UBS with the Superior Court on September 7, 2007, UBS informed that it had sold the shares in Efrón's accounts. Plaintiff's SUMF ¶ 39. UBS further informed that part of the monies, to wit $810,071.87, received from the sale were used to pay off Account 5V-50203, the credit line extended to Efrón. Plaintiff's SUMF ¶ 39; UBS's SUMF ¶ 29.  In the motion, UBS also informed that after paying the credit line debt, the cash balance left over was $351,783.13, and that UBS wrote a check to Candelario for that amount. Plaintiff's SUMF ¶ 40; UBS's SUMF ¶ 29.

The Court of Appeals denied Efrón's petition for *certiorari*, which sought to set aside the August 20, 2007 Order on the sale of assets. Plaintiff's SUMF ¶ 41. In so doing, the appeals court noted that the its prior November 21, 2006 Judgment, dismissing Candelario's request for *mandamus*, was based on the fact that the Superior Court's verbal order, at that time, was still under the consideration of the court, and a written decision had not been issued yet. Plaintiff's SUMF ¶ 41. The court also stated that the Superior Court could not revisit the issues resolved in the Amended Judgment of February 16, 2006, which ordered the payment of $50,000

monthly. Id. Lastly, the Court held that the Superior Court did not err by ordering the execution of said Amended Judgment to secure the monthly payments awarded to Candelario. Id.

**Applicable Law and Analysis**

*Statute of Limitation*

In its motion for summary judgment, UBS posits that Plaintiff's claims are time-barred insofar as the one-year statute of limitation for her Article 1802 claims began on November 13, 2006, when Judge Jiménez-Nettleship verbally vacated the order of attachment. In opposition, Plaintiff argues that she had knowledge of the alleged injury on September 4, 2007, when she received a check for $351,783.13 instead of the amount she was entitled to pursuant to the Superior Court's August 2007 order of attachment. Article 1869 of the Puerto Rico Civil Code provides a one year statute of limitation for tort claims arising under Article 1802. P.R. Laws ann. tit 31,§ 5298. However, said period begins when the aggrieved party has knowledge of the injury. Id. In the present case, Plaintiff learned on September 4, 2007 about the method applied by UBS to liquidate Efrón's assets. Since Plaintiff's present suit focuses on UBS's alleged negligence in the management, and liquidation of Efrón's assets, this Court finds that Plaintiff's claims accrued from the date she learned of her injury, that is, September 4, 2007. As a result, her claims are not time-barred.

*Article 1802 claims*

This Court notes that Candelario sets forth negligence claims against UBS, which are properly addressed under Article 1802 of the Puerto Rico Civil Code.[5] Article 1802 states that "[a] person who by an act or omission causes damage to another through fault or negligence

---

[5] When jurisdiction is based on diversity of citizenship, federal courts must apply state substantive law. Erie R.R. Co.  v. Tompkins, 304 U.S. 64, 92 (1938); Morel v. Damler Chrysler AG, 557 F. Supp. 2d 240 (D.P.R. 2008). Since the present case arises under diversity jurisdiction, Puerto Rico substantive law, and applicable case law, applies.

shall be obliged to repair the damage so done." See Albertorio-Santiago v. Reliable Financial Services, 612 F. Supp.2d 159 (D.P.R. 2009). The First Circuit has noted that "negligence has been defined by the Commonwealth courts as the failure to exercise due diligence to avoid foreseeable risks." Id. (citing De-Jesus-Adorno, v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir.1998)).

In order to prevail in an Article 1802 claim, the plaintiff must establish "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." De-Jesus-Adorno, 160 F.3d at 842 (quoting Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 50 (1st Cir.1997)); see also Sociedad de Gananciales v. González Padín, 17 P.R. Offic. Trans. 111, 125, 117 P.R. Dec. 94, 105 (1986). Under Puerto Rico law, a legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation. Id. (citations omitted).

The mere existence of an injury or damages is not grounds for liability under Article 1802. A defendant will be liable only for those reasonably foreseeable consequences to its conduct. Wojciechowicz v. United States, 576 F. Supp. 2d 241 (D.P.R. 2008) (citing De-Jesus-Adorno, 160 F.3d at 842). Specifically, "the omission that generates a liability under Article 1802 happens when 'the law imposes a duty of care requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk.'" Zabala-Calderon v. U.S., 616 F. Supp. 2d 195, (1999 D.P.R. 2008) (citing F.C. Imports, Inc. v. First Nat'l Bank of Boston, N.A., 816 F. Supp. 78, 94 (D.P.R.1993)). The duty of care owed "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49

**Civil No. 08-1833 (SEC)**                                                    17

(D.P.R. 2007). Moreover, a tortfeasor's duty of care is anticipating reasonably probable injuries to probable victims. Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987). However, "the foreseeability required under [Article] 1802 does not extend to all imaginable effects resulting from defendant's conduct. This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." Wojciechowicz, 576 F. Supp. 2d at 272.

Therefore, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. Vazquez-Filippetti, 504 F.3d 43, 49. Thus a plaintiff must demonstrate the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to this element of a tort claim. After the plaintiff has demonstrated that the defendant was negligent, that is, the defendant breached its duty of care, she must then demonstrate that the defendant's negligence was the proximate cause of her injuries. A defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries, and the defendant could have reasonably foreseen that the injuries would result from his actions. Id. at n. 6. A plaintiff might rely on similar, or even identical, factual evidence to show that Defendant breached the duty of care, and that his actions are the proximate cause of her injuries. Id.

In the present case, there are no controversies regarding the material issues of fact. Pursuant to the uncontested facts, it is undisputed that Judge Jiménez-Nettleship issued a verbal order during the November 13, 2006 hearing, and that the Minutes for said proceedings, transcribed on December 12, 2006, lack the Judge's signature, and were never properly notified to the parties. Instead, the parties disagree on the interpretation of the applicable law regarding the validity of Judge Jiménez-Nettleship's verbal order. Accordingly, this Court must determine whether a verbal order, issued in open court at the Commonwealth level, is valid and enforceable from its issuance, if it was not notified to the parties in Minutes signed by the presiding Judge.

The Puerto Rico Supreme Court has not specifically addressed this issue. Notwithstanding, the Supreme Court has held that a verbal interlocutory order issued in open court is insufficient to start the 15-day period to request reconsideration of the same, and the 30-day time period to file a *writ* of *certiorari* before the Puerto Rico Court of Appeals. See <u>Sanchez v. Dr. Pila Hospital</u>, 158 P.R. Dec. 255, 260 (2002) (certified translation). Accordingly, the court held that such a petition is premature, and dismissal was proper. Therein, the appeals court also noted that pursuant to the Puerto Rico Court of First Instance Administration Rule 32(b)(1), minutes of the proceedings held before the court will not be notified to the parties or their counsel *unless they include an order issued by the Judge in open court, in which case it shall be signed by the Judge and notified to the parties*. Furthermore, Puerto Rico Rule of Civil Procedure 65.3, 65.3, P.R. Laws Ann. tit. 32, App. III R. 65.3, requires that "[i]mmediately upon the entry of an order or judgment, the clerk shall serve notice thereof upon all the parties...in the manner proscribed in Rule 67."

From the Superior Court's Minutes,[6] it is clear that Judge Jiménez-Nettleship *verbally* set aside the October 2006 Order and Writ of Execution. However, the minutes of the hearing were *never notified to the parties or signed by the Judge*. This Court finds that *such an order is not final*, and thus enforceable, until the Courtroom Clerk issues the Minutes for the proceedings, the Judge signs the same, and the parties are notified in accordance with Rule 65.3.

UBS argues that Plaintiff's request for reconsideration, and her appeals of the same, acknowledge the validity of Judge Jiménez-Nettlehip's verbal order.[7]  This does not, however,

---

[6] Although Plaintiff's counsel questions the validity of the Minutes sent by Bobonis, she admits that she later verified that said Minutes were in the court's case file. See Plaintiff's SUMF ¶¶ 22 & 24, and accompanying exhibits. Therefore, there is no controversy as to the fact that the hearing's Minutes were entered in the case's file, albeit in December 2006.

[7]  Plaintiff knew that Judge Jiménez-Nettleship issued a verbal order during the November 13, 2006 hearing, vacating the Order to Execute Judgment served upon UBS on October 20, 2006. UBS's

change the fact that the Minutes were never notified to the parties, or signed by the Judge. Although Plaintiff's counsel verbally requested reconsideration in open court, and sought relief from Judge Jiménez-Nettleship's verbal order by filing a petition to the Puerto Rico Court of Appeals, and later to the Supreme Court, this alone does not confer validity upon the Judge's verbal order, in light of the aforementioned applicable rules and case law.    Especially considering that the Court of Appeals and the Supreme Court denied Plaintiff's requests for relief due to the lower court's non-compliance with Rule 32. Thus the appellate courts' refusals to entertain Plaintiff's request were based solely on their lack of jurisdiction. Specifically, Plaintiff's requests were premature absent a written order by the Superior Court. It is well settled law that dismissal for lack of jurisdiction does not operate as an adjudication on the merits. <u>See</u> Puerto Rico Rule of Civil Procedure 39.2, P.R. Laws. Ann. tit 32, Ap. III, and Federal Rule of Civil Procedure 41(b), 28 U.S.C. R. 41(b).

Additionally, even though Plaintiff did not request that the Minutes be signed by the Judge, and notified to the parties, neither did Efrón or UBS prior to releasing Efrón's assets. It was clearly foreseeable that releasing Efrón's assets could be extremely prejudicial to Plaintiff. The mistake and omission by the Courtroom Clerk, and subsequently UBS's failure to adequately verify the Superior Court's final order, caused considerable injuries to Plaintiff.

SUMF ¶ 20. As a result, Plaintiff filed the afore-mentioned motion before the Court of Appeals, seeking to "[s]et aside the order of Execution of Judgment and announce[ment] that he was not going to render any order of execution," and questioning Judge Jiménez-Nettleship's "authority to… stay the execution of judgment," and to "refuse to issue an order of execution." Id. Plaintiff also characterized the ministerial duty that prompted the petition for *mandamus* as "[the] duty of ordering the execution of the judgment," and asked the following rhetorical question: "with what authority Judge Jiménez-Nettleship announced that he is not going to issue any order of execution?" Id. Finally, Plaintiff argued that, as a result of Judge Jiménez-Nettleship's ruling, the attachment order previously served upon UBS was "ineffective," as Efrón could freely dispose of his assets. Id. Specifically, she stated that "if the proceedings before the FIC [First Instance Court] are not immediately stayed, this would allow Efrón to transfer property which are now at UBS to foreign jurisdictions causing severe damage to Candelario and makes the judgment in this case ineffective."Id.

Albeit initially UBS sought to comply with the court's orders, and even requested further clarification regarding its implementation, it finally released Efrón's assets in the absence of a valid written court order, or a specific instruction regarding this issue. Therefore, this Court finds that UBS failed to act like a prudent and reasonable person under the circumstances, and to exercise the owed duty of care. As a direct result of UBS's negligent actions, Plaintiff has suffered damages.

Lastly, this Court notes that although UBS argues that it did not know about the November 13, 2006 hearing nor the Judge's verbal order until February 2007, the uncontested facts show that UBS was aware that a hearing would be held on November 13, 2006, and decided not to attend despite their questions about the extent of the Order and Writ of Execution. Specifically, in its "Motion to Clarify Order," UBS suggested to the court that the Order and Writ of Execution's scope be clarified by the court and the parties at the November 13, 2006 hearing. Plaintiff's SUMF ¶ 11. Therefore, although Plaintiff's counsel had no obligation to inform UBS about said hearing, UBS's assertions that it was unaware that a hearing would be held are incorrect.

Considering the foregoing, this Court cannot conclude that Plaintiff's alleged acknowledgment of the verbal order's validity, together with the appellate court's dismissals of Plaintiff's petitions, amount to making Judge Jiménez-Nettleship's order enforceable from its issuance. UBS's reliance on unsigned Minutes, instead of a properly notified order or a specific instruction from the Superior Court, shows negligence which is properly addressed under Article 1802.

*Monies owed*

Although Defendant posits that Account WR-00855 had no value since May 2007, Plaintiff points out that purchases, sales, and transfers of assets took place on said account from October 2006 to May 2007. See UBS's SUMF & Plaintiff's OSMF ¶ 27. Moreover, as of

**Civil No. 08-1833 (SEC)**                                                      21

February 2007, when Efrón's accounts were improperly released, Account JX60059 had values and assets worth over $11 million. See Docket # 23-31. By July 31, 2007, however, its value decreased to $1,155,367.71. See Docket # 31-24. Finally, on August 31, 2007, the account's value was $351,783.13. Docket # 31-24. Said amount was subsequently paid to Candelario. See Docket #23-25.

This Court finds that insofar as Account JX60059 was pledged as a Collateral Account for loan Account 5V50203, UBS acted correctly in paying off loan account 5V50203 with the funds from the former. However, as previously stated, from the date of their release in February 2007 to July 31, 2007, the values and assets in Account JX60059 decreased from approximately $11 million to $1,155,367.71. Thus UBS's negligent release of Efrón's accounts in February 2007 led to a significant decrease of the assets in Account JX60059, and ultimately deprived Plaintiff from receiving the amount ordered by the Superior Court. Specifically, the Superior Court awarded Plaintiff $4,160,522.61, and she only received $351,783.19. Therefore, as a direct result of UBS's negligence, Plaintiff did not receive $3,808,739.48.

Insofar as UBS should not have released Efrón's assets absent a written court order, or specific instruction from the Superior Court, this Court finds that UBS is liable to Plaintiff for the amount of $3,808,739.48, plus interest over said sum at a rate of 10.50% annually from June 4, 2001. Although, as previously noted, UBS did not err in  paying off loan account 5V50203, as of February 2007, Efrón's accounts had sufficient funds to satisfy said loan, as well as the Order and Writ of Execution. Therefore, the payment of Loan Account 5V50203 would not have adversely affected Plaintiff.

**Conclusion**

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED in part and DENIED in part**, and UBS's motion for summary judgment is **GRANTED in**

**Civil No. 08-1833 (SEC)**                                                      22

**part and DENIED in part.** Plaintiff is entitled to receive $3,808,739.48, plus interest over said

sum at a rate of 10.50% annually from June 4, 2001.

      **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this day 13th of January, 2010.

                              *S/Salvador E. Casellas*
                              SALVADOR E. CASELLAS
                              U.S. Senior District Judge