IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MADELEINE CANDELARIO-DEL MORAL,

    Plaintiff,

v.

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO,

    Defendant.

**Civil No. 08-1833 (SEC)**

**OPINION AND ORDER**

    Before the Court are David Efron's motion to intervene under Fed. R. Civ. P. 24(a)(2) (Docket # 198), and the parties' response thereto. Dockets # 199 & 200. After reviewing the filings and the applicable law, Efron's motion to intervene is **DENIED**.

**Factual and Procedural Background**

    A comprehensive recitation of the procedural and factual background of this diversity tort suit case can be found in the First Circuit's recent opinion in <u>Candelario v. UBS</u>, 699 F.3d 93 (1st Cir. 2012). Here, the Court recounts only those facts necessary to explain why putative intervenor David Efron's untimely petition must be denied. Suffice it to say that this case, which nears its fifth anniversary, is an offshoot of a broader and longstanding dispute between plaintiff Madeleine Candelario and Efron over the division of their "conjugal community property" following their divorce in 2001.

    In this case, Candelario sues UBS Financial Services Incorporated of Puerto Rico ("UBS") under Puerto Rico's general tort statute, <u>see</u> P.R. Laws Ann. tit. 31, § 5141, for negligently releasing Efron's funds and paying off his credit-line account. Docket # 1. There is a related proceeding in state court regarding the division of the "conjugal community property" and another in the Puerto Rico Bankruptcy Court— Efron's bankruptcy proceedings.

**CIVIL NO. 08-1833 (SEC)**                                                                  **Page 2**

This federal action, more precisely, is a spillover of Candelario's efforts to collect on a state-court judgment that ordered Efron to make advance payments of community property to Candelario until a community property division could be made. See Candelario, 699 F.3d at 95-96. If, as Efron contends, Candelario has already received her share of the community property, the Puerto Rico Court of Appeals has made clear that she would not be entitled to retain any excess monthly payments, for these are merely advances on her share of the community property. Candelario v. Efron, KLRX-10-000024, 2010 WL 3200139, at *6 (P.R. Cir. Apr. 30, 2010) (translation provided by the parties at Docket # 110-1, p. 38). A crucial determination in this case, then, relates to the amounts Candelario has received, and whether she has been made whole by such payments. Id.

On January 13, 2010, the Court entered summary judgment against UBS. Candelario del Moral v. UBS Financial Services Inc. of Puerto Rico, 691 F.Supp.2d 291 (D.P.R. 2010). Later that month, UBS "informed Efron that it intended to seek indemnification from him if the Court's ruling were upheld on appeal." Docket # 200, p. 3. Under the terms of Efron's master account agreement, UBS maintains that Efron is obliged to indemnify UBS for any claims relating to his accounts, including for any settlements, judgments, or damages incurred by UBS. Id. Then, on July 28, 2011, UBS filed a proof of claim in Efron's bankruptcy proceeding to assert a claim for its litigation expenses in this case, and a contingent claim for indemnification of any settlements or judgment that might be incurred. Docket # 161-2.

On November 9, 2012, the First Circuit vacated this court's summary judgment ruling and remanded the case for further proceedings. See Candelario, 699 F.3d at 107. A status conference was held soon thereafter, during which the parties discussed the First Circuit's recommendation that "this is a case best resolved by settlement," id., and this court's suggestion that the parties mediate the claims. Minutes of January 17, 2013, Case Management and Status Conference, at Docket # 182, p. 1. (D.P.R. Jan. 17, 2013). As the Court and the parties agreed,

**CIVIL NO. 08-1833 (SEC)**                                                                 **Page 3**

"ascertaining the precise underlying liability from Efron to Candelario was crucial" to any meaningful assessment of damages or settlement. Id., p. 2. After UBS and Candelario picked a mediator, the Court entered a mediation order setting an April 30, 2013 deadline to conclude mediation. Docket # 193.

In the same time frame, UBS counsel contacted Efron to inform him that the case had been referred to mediation. Correspondence was then exchanged between UBS and Efron. Efron apparently disagreed with UBS's position that his account agreement does not give him any right to participate in or control UBS's litigation, and that UBS's right to indemnification for a settlement is not conditioned on his approval. On March 4, 2013, UBS counsel informed Efron that UBS intended to proceed with the March 5 mediation in good faith, and that UBS reserved the right to enter into a reasonable settlement with Candelario in its sole discretion. UBS also reiterated that Efron's "account agreement does not condition UBS's right to indemnification on Efron's advance authorization or approval," and that, if UBS did enter into a settlement with Candelario, it intended to enforce its right to indemnification from Efron. Docket # 198-2.

Efron filed the instant motion one week later, on March 11, 2013. Docket # 198. He seeks to intervene pursuant to Fed. R. Civ. P. 24(a)(2) (intervention as of right) and requests a 30-day stay of the mediation and other proceedings, so that he may obtain leave of the bankruptcy court to retain counsel. Docket # 198.[1] "[I]n order to avoid further miscarriages of justice and further appellate reversals of judgments in this case," Efron maintains, he "should be allowed to intervene based on Rule 24(a)(2) of the Federal Rules of Civil Procedure." Id., p. 2. It appears, furthermore, that Efron attempts to justify his motion on the basis that he

---

[1] As of today, no counsel has appeared on behalf of Efron. To the extent that over 30 days have already elapsed since Efron filed his motion on March 11, 2013, his perfunctory request for a 30-day stay of the proceedings is denied, and in any event, because his request to intervene fails, so must his concomitant motion to stay the proceedings.

**CIVIL NO. 08-1833 (SEC)** **Page 4**

"disagrees" with UBS's stated position. He also asserts, without explaining why, that he is a "major player in this case and <u>could be</u> the principally affected party in the results of the same." <u>Id.</u>, p. 1 (emphasis added).

Candelario timely opposed. She alleges that Efron's motion "utterly fails to comply with the requirements for intervention." Docket # 199, p. 1. She specifically posits that Efron's request for intervention fails for the following reasons: (1) his application is untimely; (2) he cannot show that "his ability to protect his interest will be impaired by the instant litigation"; and (3) "he failed to follow the procedural rules related to intervention requests." <u>Id.</u>, p. 4. UBS, for its part, "takes no position" on Efron's motion, explaining that, irrespective of whether Efron is permitted to intervene, it "intends to call Efron as a witness to offer evidence regarding whether Candelario has been made whole by the amounts she has received." Docket # 200, pp.6-7. UBS acknowledges, however, that a "key question" is whether Efron's motion to intervene is timely. <u>Id.</u>, p. 1.

**Standard of Review**

It is common ground that there are two strands of intervention: Intervention as of right, Fed. R. Civ. P. 24(a), and permissive intervention, Fed. R. Civ. P. 24(b). Insofar as Efron styles his motion as a motion to intervene as of right, <u>see</u> Docket 188 (expressly invoking Fed. R. Civ. P. 24(a)(2)), the Court "cabin[s] . . . [the] discussion accordingly." <u>Ungar v. Arafat</u>, 634 F.3d 46, 50 (1st Cir. 2011) (citing <u>Negrón-Almeda v. Santiago</u>, 528 F.3d 15, 21 (1st Cir. 2008)).[2]

Intervention as of right is regulated by Federal Rule of Civil Procedure 24(a), which provides as follows:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so

---

[2] By parity of reasoning, Efron has waived "any claim for permissive intervention." <u>Id.</u> at 50 n. 3.

**CIVIL NO. 08-1833 (SEC)**                                                                                                  Page 5

> situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Interpreting this rule, the First Circuit has in turn distilled the following requirements: (1) the timeliness of the motion to intervene; (2) the existence of an interest regarding the property or transaction that forms the basis of the pending action; (3) a realistic threat that the disposition of the action will impede the movant's ability to protect that interest; and (4) the lack of adequate representation of his position by any existing party. Puerto Rico Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura, 637 F.3d 10, 14 (1st Cir. 2011); Nextel Communications of Mid-Atlantic, Inc. v. Town of Hanson, 311 F. Supp.2d 142, 150 (1st Cir. 2004).

In order to prevail, a would-be intervenor must meet each one of these requirements, as "failure to satisfy any one of them defeats intervention." Ungar, 634 F.3d at 5 (citing B.Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544-45 (1st Cir. 2006); Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir.1998) (emphasis added)). When analyzing a motion to intervene as of right, moreover, courts must apply a "holistic, rather than a reductionist, approach," and keep in mind "a commonsense view of the overall litigation." Patch, 136 F.3d at 204 (citing United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.)). Since the particular facts of the case are essential to determine an intervenor's rights, "the very nature of a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions." Id.

**Applicable Law and Analysis**

*Timeliness*

Because the timeliness inquiry is a "prevenient question" that "stands as a sentinel at the gates whenever intervention is requested and opposed," R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 584 F.3d 1, 7 (1st Cir. 2009) (quoting Banco Popular v. Greenblatt, 964

**CIVIL NO. 08-1833 (SEC)**                                                                 **Page 6**

F.2d 1227 (1st Cir.1992) (internal quotation marks omitted)), the analysis begins here.[3] This threshold determination, which "is inherently fact-sensitive and depends on the totality of the circumstances," involves the following 4 considerations:

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention. Id. (citing Greenblatt, 964 F.2d at 1230-31)

Each of these elements, the First Circuit has explained, "must be appraised in light of the posture of the case at the time the motion is made." Id. (citing Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008)). It is therefore no surprise that, "as a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." Id. As relevant here, the timeliness requirement is "often applied less strictly with respect to intervention as of right." Id. (citing Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 320 (1st Cir.1997)). But even in the case of a motion to intervene as of right, the timeliness requisite "retains considerable bite." Id.

Efron neither mentions nor applies the timeliness factors. Candelario, for her part, argues that "there is, quite simply, no way for Efron to demonstrate the timeliness of his request." Docket # 199, p. 9. The Court agrees with Candelario's persuasive contention, which Efron does

---

[3] It is worth noting, as Candelario correctly points out, that Efron's motion to intervene was never "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). This noncompliance, without more, suffices to deny his motion on procedural grounds. See Brown v. Colegio de Abogados de Puerto Rico, 277 F.R.D. 73, 76 (D.P.R. 2011) (denying motion to intervene that was not accompanied by pleading setting forth putative intervenor's claims and defenses); accord Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 783-84 (1st Cir. 1988) ("The language of . . . [Rule 24(c)] is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion."). While the Court in no way excuses such "dereliction [that] ordinarily would warrant dismissal" of the motion to intervene, see Public Service Company of New Hampshire v. Patch, 136 F.3d 197, 205 n. 6 (1st Cir. 1998), the Court nonetheless entertains (and denies) Efron's motion on the merits as well.

**CIVIL NO. 08-1833 (SEC)**                                                                                                 **Page 7**

not even attempt to rebut. And because this is an easy call, the Court conducts a succinct timeliness inquiry in turn.[4]

The first factor — the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene — weighs heavily against intervention. To begin with, this case was filed in August of 2008— almost 5 years ago. Docket # 1. And even assuming, dubitante, that Efron was never privy to the filing of the action in 2008, in January 2010, at very least, "he obtained actual or constructive notice that a pending case threatens to jeopardize his rights." R & G Mortgage Corp., 584 F.3d at 8 (citing Greenblatt, 964 F.2d at 1231; Caterino v. Barry, 922 F.2d 37, 40-41 (1st Cir.1990)). As previously noted, following the January 2010 judgment, "UBS informed Efron that it intended to seek indemnification from him if the Court's ruling were upheld on appeal." Docket # 200, p. 3 (referring to the January 2010 judgment). Alternatively, it is beyond peradventure that Efron knew about this action on July 28, 2011, when UBS filed a Proof of Claim in his own bankruptcy proceedings. Under either scenario, the delay is unjustifiable. Efron, a seasoned attorney, has made no attempt to explain why he procrastinated for 2 years to intervene. He does not argue, for instance, that there are any special circumstances that would excuse his dilatory conduct. See R & G Mortgage Corp., 584 F.3d at 8 (noting that "[t]he passage of time is measured in relative, not absolute, terms," so what "may constitute reasonably prompt action in one situation may be unreasonably dilatory in another"). And, to be sure, there are no special circumstances here in any event.

In short, a delay of 2 years after Efron irrefragably knew that UBS intended to seek indemnification from him is an inordinate amount of time— at least, where as here, there are

---

[4] Because neither party has requested a hearing on Efron's motion to intervene, and because "it is clear from the face of the application that the motion must be denied," Center for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001) (quoting 7C Wright, Miller, & Kane § 1914 (2d ed. 1986)), a hearing is unnecessary.

**CIVIL NO. 08-1833 (SEC)**                                                                                                          **Page 8**

no peculiar circumstances that would justify such a lack of diligence. Efron's motion is thus unreasonably late. Compare, e.g., id. at 8-9 (affirming district court's determination "that a delay of two and one-half months after . . . [the defendant] knew of the incipient problem . . . was inexcusable"); Greenblatt, 964 F.2d at 1231 (finding putative intervenor's "failure to act for over three months, though armed with full knowledge, to be inexpiable"). Cf. United States v. Taylor, 54 F.3d 967, 972 (1st Cir.1995) (reiterating that, as a general matter, "the law ministers to the vigilant, not to those who sleep upon perceptible rights").

The same holds true for the second and third elements.[5] Allowing Efron's belated petition to intervene would further delay this soon-to-be 5-year-old case; such a hangup would in turn prejudice Candelario "in the form of undue delay." Blount-Hill v. Zelman, 636 F.3d 278, 286-87 (6th Cir. 2011). Recall that, by the time Efron moved to intervene, the parties had already been in the midst of a post-appeal mediation. In fact, the mediation is scheduled to conclude tomorrow, April 30, 2013. See Docket # 193. That Efron seeks to intervene at this particular juncture — at a time when the parties have been having meaningful settlement talks or, alternatively, bring this case to trial promptly — supports the reasonable inference that the motion is a "tactical attempt to thwart [a potential] settlement rather than participate in the litigation." R & G Mortgage Corp., 584 F.3d at 9; cf. Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico, 815 F. Supp. 2d 495, 507 (D.P.R. 2011) ("[T]he record shows that each time that Candelario has appeared to make inroads on Efron, he has managed to turn the tables on her."). On the other hand, Efron's perfunctory claim of prejudice should intervention be denied is wholly unconvincing. As a threshold matter, Efron's motion to intervene, which contains no

---

[5] For ease of analysis, these factors — the prejudice to existing parties should intervention be allowed, and the prejudice to the putative intervenor should intervention be denied — are considered together. See, e.g., R & G Mortgage Corp., 584 F.3d at 9 (conglomerating discussion of second and third elements, reasoning they "involve the balance of harms"); Walgreen Co. v. de Melecio, 194 F.R.D. 23, 26 n. 2 (D.P.R. 2000) aff'd sub nom. Walgreen Co. v. Feliciano de Melecio, 6 F. App'x 27 (1st Cir. 2001) (same).

**CIVIL NO. 08-1833 (SEC)**                                                                 **Page 9**

case law, fails to abide by the First Circuit's "oft-quoted maxim that litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir. 2013) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). This contention is thus summarily rejected. See, e.g., Rodriguez-Machado v. Shinseki, 700 F.3d 48, 49 (1st Cir. 2012) (per curiam).

The same conclusion would follow even if the Court considered Efron's sole and fatally undeveloped hypothetical that "he is a major player in this case and could be the principally affected party in the results of the same." Docket # 198, p. 1 (emphasis added). Even, assuming, arguendo, that denying his request for intervention would prejudice Efron, such a prejudice would not be significant, as Efron "still has an adequate remedy." R & G Mortgage Corp., 584 F.3d at 10. As correctly observed by Candelario, there will be no res judicata, so Efron will be free to continue challenging Candelario's entitlement to her share of the community property. If and when UBS files an action against Efron to recover any amounts it may have to disburse here, Candelario correctly points, Efron would nonetheless be free to raise any defense he may have to such an action, as nothing in this case would preclude him from doing so. "The availability of an adequate alternative remedy softens any plausible claim of prejudice." Id. (citation omitted).

The fourth and final element of the timeliness inquiry requires an assessment of whether any special circumstances "militat[e] in favor, or against, intervention." Greenblatt, 964 F.2d 1227 at 1233. Here, "the balance is unaffected." Id. While Efron does not even attempt to identify any special circumstances that would warrant intervention, there appears to be no such unusual circumstances cutting against intervention either.

It follows inexorably that every single factor points in the same direction: Efron has failed to shoulder his burden of demonstrating that his motion to intervene is timely. And his failure is unsurprising. The record reflects undue delay by Efron, a would-be intervenor with

**CIVIL NO. 08-1833 (SEC)**                                                                              **Page 10**

complete knowledge that his rights were in peril. "The record also reflects an unfavorable balance of harms and an absence of ameliorating circumstances." R & G Mortgage Corp., 584 F.3d at 10. Having concluded that Efron cannot meet the timeliness requirement, the Court need not "consider whether other conditions for intervention under Rule 24 were satisfied." Nat'l Ass'n for Advancement of Colored People v. New York, 413 U.S. 345, 369 (1973).

### Conclusion

For the reasons stated, Efron's motion to intervene is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of April, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge